# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

GARRY CURTIS,
        Plaintiff,

v.                                                           Civil Action No. 3:16-cv-00731-JAG

PROPEL PROPERTY TAX FUNDING, LLC,
and PROPEL FINANCIAL SERVICES, LLC,
        Defendants.

## OPINION

Garry Curtis was behind on the taxes he owed to the City of Petersburg ("Petersburg"), so he entered into an agreement with Propel Property Tax Funding, LLC ("Propel Tax"), and Propel Financial Services, LLC ("Propel Financial") (collectively, "Propel"). Through this agreement, Propel paid taxes to Petersburg on behalf of Curtis, and then Curtis paid back Propel, with interest. Curtis, on behalf of himself and other similarly situated consumers, has now sued Propel based on the term of this and accompanying agreements, plus the related disclosures. Specifically, Curtis alleges that Propel has violated (I) the Truth in Lending Act ("TILA"); (II) the Electronic Funds Transfer Act (the "EFTA"); and (III) the Virginia Consumer Protection Act (the "VCPA").

Propel has challenged whether Curtis has standing to proceed on the EFTA claims. Because the harm alleged by Curtis for these claims is the type of harm Congress sought to prevent when it passed the EFTA, the Court finds that Curtis has alleged a concrete injury. Curtis has also demonstrated the other elements of standing, so the Court denies Propel's challenge and finds that Curtis has standing to proceed.

Propel has also moved to dismiss for failure to state a claim. The Court will deny the motion as to Counts I and II because the tax payment agreements offered by Propel to consumers

like Curtis qualify as consumer credit transactions. As to Count III, however, the Court will grant the motion, but will allow Curtis leave to amend his complaint as to this claim.

## I. BACKGROUND

Propel offers tax payment agreements to residents in Petersburg pursuant to Va. Code Ann. § 58.1-3018. This statute permits localities in Virginia to authorize third parties that want to offer third-party tax payment agreements ("TPAs"). *Id.* § 58.1-3018(B). Under these TPAs, authorized third parties contract with taxpayers to pay amounts due to the locality on behalf of the taxpayers. *Id.* § 58.1-3018(A). The TPAs can cover payment of "current taxes, charges, fees and obligations, delinquent taxes, penalties and interests, or any combination of the foregoing," both related and unrelated to real property. *Id.* If the taxes paid subject to the agreement are for real property, however, the third party must record a copy of the TPA in the land records. *Id.* § 58.1-3018(D). The statute regulates the terms of these TPAs, including the maximum repayment period (96 months), the maximum interest rate (16% annual rate), and the maximum origination fee (10% of the amount paid by the third party). *Id.* § 58.1-3018(B)(2). The treasurer of the locality must approve the interest rate and the origination fee. *Id.*

Once the parties execute a TPA, the authorized third party must pay the taxes subject to the agreement to the treasurer of the locality within ten days. *Id.* § 58.1-3018(B)(1). This payment tolls the enforcement period for the taxes subject to the agreement. *Id.* § 58.1-3018(E). If the taxes paid subject to the agreement are for real property taxes, this payment from the third party to the locality does not affect the tax lien created by state law.[1] The taxpayer then repays

---

[1] In Virginia, a lien is placed on real property for payment of assessed taxes. Va. Code Ann. § 58.1-3340. This lien has priority over any other liens or encumbrances. *Id.* The locality can enforce the lien through foreclosure if the taxes on the property remain delinquent beyond a certain period. *Id.* § 58.1-3965. Section 58.1-3018 does not address the effect of TPAs on real property liens. Thus, the Court assumes that the statute does not affect the tax lien, other than by

2

the third party in installments over the set period. *Id.* § 58.1-3018(B)(2). The third party provides monthly reports to the locality regarding all outstanding TPAs. *Id.* § 58.1-3018(B)(4).

If the taxpayer defaults on his payments to the third party, the locality reimburses the third party the amount it paid to the locality, minus all payments received by the third party from the taxpayer, excluding interest and fees charged by the third party under the agreement. *Id.* § 58.1-3018(C)(1). Once the locality reimburses the third party, the locality reinstates the taxes owed by the taxpayer on its books in the amount of the reimbursement. *Id.* § 58.1-3018(C)(2).

For example, say Tim Taxpayer owes Petersburg $10,000 in real property taxes. Tim enters into a TPA with Propel. Propel pays Petersburg the $10,000. Tim pays Propel a total of $5,000 in installments for the first four years of the installment period. Of that $5,000 paid by Tim, $1,000 went to Propel for fees and interest. Tim then defaults. Propel seeks reimbursement from Petersburg. Petersburg would reimburse Propel $6,000. This represents the $10,000 that Propel originally paid Petersburg, minus $4,000—the amount paid by Tim to Propel, less interest and fees. Petersburg would then reinstate real property taxes owed by Tim in the amount of $6,000.

What is the real world result of the transaction? For the four years before default, Petersburg had the $10,000 paid by Propel to pay its bills. After the reimbursement, Petersburg keeps $4,000 and has $6,000 on its books as taxes owed by Tim. Propel walks away with $11,000, the $5,000 paid by Tim and the $6,000 reimbursed by Petersburg. So Propel makes $1,000 profit, the amount of Tim's payments that went toward interest and fees. Tim Taxpayer has paid $5,000 toward his $10,000 in real property taxes, but still owes $6,000 to Petersburg.

---

tolling the limitation period for enforcement of the underlying real property taxes. Even if TPAs could affect tax liens, however, the TPA relevant in this case does not: "Any lien or right to impose a lien granted by law to [the locality] remains unaffected by this Agreement." (Compl. Ex. G, at ¶ 6.B.)

3

Tim, however, got the benefit of Petersburg not seeking to foreclose on his home during that four-year period.

In this case, Curtis applied for a TPA with Propel. Propel provided Curtis a disclosure sheet, which included the terms of the agreement, the applicable interest rate, and the costs and fees. (Compl. Ex. B.) This document contained inaccurate and potentially misleading information. At closing, Curtis signed a document titled Memorandum of Tax Payment Agreement (the "Memorandum"), (Compl. Ex. F), a tax payment agreement (the "Curtis TPA"), (Compl. Ex. G), and an agreement authorizing a monthly electronic funds transfer[2] (the "EFT Agreement"), (Compl. Ex. E).[3] Curtis also received an updated payment terms disclosure sheet. (Compl. Ex. H.) This disclosure sheet corrected the statutory inaccuracies from the original disclosure, but listed different dollar values for some figures. Pursuant to these documents, Propel agreed to pay Petersburg $14,547.65 on Curtis's behalf for real property taxes. The parties agreed to a $1,454.76 origination fee (10% of the amount of taxes paid), and an interest rate of 10.95%, with no interest accruing in the first six months after payment. The Curtis TPA outlined additional possible fees, including fees for recording or insufficient funds. Under the agreement, the installment payments go first to fees, then to interest, then to the principal. The Curtis TPA made clear that payment by Propel to the locality "is not final and will not extinguish [Curtis's] obligation" to the locality. (Compl. Ex. G, at ¶ 6(A).) The Memorandum reiterated this point. (*See* Compl. Ex. F.) For its part, the EFT Agreement provided in part that the authorization for the recurring electronic funds transfer shall remain in effect until "Propel

---

[2] Curtis alleges that Propel conditioned the TPA on him agreeing to make payments by electronic funds transfer.

[3] The parties to the Memorandum and the Curtis TPA were Curtis and Propel Tax. In the EFT Agreement, Curtis authorized Propel Financial to initiate the electronic funds transfers. At this stage, the Court will use "Propel" to refer to the defendants collectively.

receives notification from [Curtis] of termination of this authorization at least 7 business days prior to the Day of Debit." (Compl. Ex. E.)

## II. DISCUSSION

Curtis has sued Propel on behalf of himself and other similarly situated individuals. Curtis alleges that Propel violated: (I) TILA; (II) the EFTA; and (III) the VCPA.[4]

Propel moved to dismiss all three counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[5] In its briefs in support of its motion to dismiss, however, Propel only addressed one of the two alleged violations of the EFTA. Specifically, the briefs focused on the alleged violation of 15 U.S.C. § 1693k, which, like the TILA claim in Count I, concerns the definition of the term "credit." Propel did not raise any arguments about the alleged violation of § 1693*l*, nor do the arguments about the term "credit" apply to this claim. At the March 23, 2017 hearing, the Court asked about this discrepancy and, in lieu of argument, permitted both parties to file simultaneous supplemental briefs on the § 1693*l* claim. In its supplemental brief, Propel raised two entirely new arguments on why the Court should dismiss the § 1693*l* claim, one merits-based and one jurisdictional, based on standing. The Court will

---

[4] Curtis brings Count I against Propel Tax only. He brings Counts II and III against both defendants, Propel Tax and Propel Financial.

[5] A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007)).

not address the new merits-based argument because Propel failed to raise it in its initial briefs. As to the jurisdictional argument, however, the Court ordered additional briefing because this argument implicates the Court's authority to even reach the merits of the claims. Accordingly, the Court must address it first.

## A. Standing[6]

The standing doctrine stems from the power of federal courts to hear only actual cases and controversies. *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016). The doctrine identifies the disputes appropriately resolved through the judicial process. *Susan B. Anthony List v. Driehaus*, __ U.S. __, 134 S. Ct. 2334, 2341 (2014). Specifically, to have standing, a plaintiff must have suffered an injury traceable to the defendant's actions that a federal court could redress with a favorable decision.[7] *Spokeo*, 136 S. Ct. at 1547. The injury must be concrete and particularized, as well as actual or imminent. *Id.* at 1548. A "particularized" injury is one that affects the plaintiff in a personal and individual way. *Id.* A "concrete" injury is one that actually exists—one that is real, not abstract. *Id.* While tangible injuries fit more easily into the "concrete" definition, intangible injuries can also meet the concreteness requirement in certain circumstances. *Id.* at 1549. Relevant to this case, a violation of a procedural right granted by statute can meet the concrete injury requirement if the harm alleged by the plaintiff is the type of harm Congress sought to prevent when it enacted the specific statute. *Dreher v. Experian Info. Solutions, Inc.*, 856 F.3d 337, 345–46 (4th Cir. 2017).

---

[6] The plaintiff must clearly allege facts demonstrating standing. *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016).

[7] In a class action case, courts analyze standing based on the allegations of injury made by the named plaintiff. *Dreher v. Experian Info. Solutions., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017).

In this case, Propel challenges whether Curtis has standing to bring his claims under the EFTA. Congress passed the EFTA "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). Curtis has alleged that Propel violated the EFTA when it (1) made the TPA contingent on Curtis paying his monthly payments by electronic fund transfer, and (2) included in the EFT Agreement a provision that waived a right conferred by the EFTA. Curtis attached to his complaint the specific agreements that he entered into with Propel. Thus, the alleged violations affect him in a personal and individualized way, meeting the particularization requirement. The harm of these agreements—abridging rights established by the EFTA—was exactly the type of harm that Congress sought to prevent when it enacted the EFTA. Finally, because Curtis and Propel entered into these agreements, the alleged harm is imminent, if not actual. Accordingly, Curtis has standing to proceed on his claims under the EFTA.

Nevertheless, the Court finds that its resolution of this issue involves a controlling question of law as to which there is a substantial ground for difference of opinion. Further, an immediate appeal of this decision may materially advance the ultimate termination of this litigation. Accordingly, the Court will certify this ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

### *B. Consumer "Credit"*

Turning to the merits of Propel's motion, Propel first argues that the Court should dismiss the TILA claim in Count I and the EFTA § 1693k claim in Count II because of the definition of the term "credit." The parties agree that the Court's determination about the definition of "credit" in TILA governs its resolution of the definition of "credit" in the EFTA.

7

Congress passed TILA to assure a meaningful disclosure of credit terms, with the hope of avoiding the uninformed use of credit by consumers. 15 U.S.C. § 1601(a). TILA requires creditors to make certain disclosures related to consumer credit transactions. *Id.* § 1638(a). A "consumer credit transaction" is "one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* § 1602(i); *see* 12 C.F.R. § 1026.2(a)(12). In turn, the term "credit" means "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f). The regulation related to TILA mirrors this definition, but the Official Staff Commentary to the regulation clarifies that tax liens and tax assessments "are not considered credit for purposes of the regulation." 12 C.F.R. Pt. 226, Supp. I, cmt. 2(a)(14). Nevertheless, "third-party financing of such obligations (for example, a bank loan obtained to pay off a tax lien) *is* credit for purposes of the regulation." *Id.* (emphasis added).

The TPAs sanctioned by Va. Code Ann. § 58.1-3018 represent third-party financing of a tax obligation. Through the individual transactions, Propel loans the taxpayers a certain amount of money to pay off their tax obligations. Propel then defers payment of this debt over a period. In other words, Propel grants taxpayers the right "to incur debt and defer its payment." 15 U.S.C. § 1602(f); *see Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 410 (3d Cir. 2000). In the case of paying off real property taxes, the loan is "primarily for personal, family, or household purposes" because the loan satisfied an obligation on the taxpayer's home. Accordingly, in Virginia, TPAs qualify as consumer "credit" for the purposes of TILA.

The fact that Virginia regulates the terms of the loan does not change the nature of the loan. Indeed, Virginia sets a legal rate of interest on all loans made in the Commonwealth, and

8

then exempts nine types of loans, including TPAs, from this maximum rate. Va. Code Ann. § 6.2-303. Section 58.1-3018 really just permits a state-sanctioned loan at a higher interest rate, presumably with the goals of helping struggling localities and giving incentives to lenders to provide loans to taxpayers who may otherwise not qualify for traditional loans.

The cases cited by Propel from the Third and Fifth Circuits do not affect this holding, as those cases did not confront the type of tax payment agreement permitted by the statutory framework in Virginia. In *Billings v. Propel Financial Services*, the Fifth Circuit confronted a Texas statute that allowed taxpayers to authorize third parties to pay taxes on the taxpayers' behalf, and then permitted the locality to transfer the tax lien[8] to the third party that paid the taxes. 821 F.3d 608, 610 (5th Cir. 2016). In that situation, "when a lender pays a taxing authority and in exchange receives the tax lien . . . , the lender holds the preexisting tax claim—not a new debt arising from the execution of the promissory note." *Id.* at 613 (incorporating the holding of *In re Kizzee-Jordan*, 626 F.3d 239 (5th Cir. 2010)). Similarly, in *Pollice v. National Tax Funding*, the Third Circuit addressed a situation where the locality had sold the tax liens to a third party, National Tax. In that case, "National Tax, as the legal holder of the tax lien at issue, maintain[ed] the rights of the original holder of the liens. Such liens are not considered any less tax claims by virtue of their assignment to National Tax." 225 F.3d at 409 (adopting the holding of the district court).[9] These transactions differ from what happens in Virginia, where the locality does not relinquish its rights to enforce the tax obligations owed by their taxpayers. In this case specifically, Propel does not hold the preexisting tax claims. Indeed, the Curtis TPA

---

[8] "Texas imposes a property tax, which is secured by a 'tax lien' that automatically attaches to taxable property each year . . . ." *Billings v. Propel Fin. Servs., L.L.C.*, 821 F.3d 608, 610 (5th Cir. 2016).

[9] *See also Pollice*, 225 F.3d at 402 ("After assignment of the claims to [National Tax], there still had not been a 'transaction' involving the homeowners; their obligation to pay [National Tax] still arose from the levying of taxes.").

specifically states: "Any lien or right to impose a lien granted by law to [the] Treasurer remains unaffected by this Agreement." (Compl. Ex. G, at ¶ 6(A).)

Because the TPAs qualify as consumer credit transactions, the transactions are subject to TILA. The transactions are also subject to § 1693k of the EFTA, which prohibits an entity from conditioning the extension of credit to a consumer on the consumer's repayment by means of a preauthorized electronic funds transfer. 15 U.S.C. § 1693k(1). Similar to TILA, the EFTA's implementing regulations define "credit" as "the right granted by a financial institution to a consumer to defer payment of debt, incur debt and defer its payment, or purchase property or services and defer payment therefor." 12 C.F.R. § 205.2(f). Accordingly, the Court will deny Propel's motion to dismiss Count I and the § 1693k claim in Count II.

Nonetheless, the Court finds that its resolution of these claims involves a controlling question of law as to which there is a substantial ground for difference of opinion. Further, an immediate appeal of this decision may materially advance the ultimate termination of this litigation. Accordingly, the Court will certify this ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

### C. The VCPA Claim

Finally, Propel moves to dismiss the VCPA claim in Count III for failure to state a claim. The General Assembly passed the VCPA "to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197. To state a claim under the VCPA, the plaintiff must allege (1) a fraudulent act (2) by a supplier (3) in a consumer transaction. *Id.* § 59.1-200(A); *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010). As a claim sounding in fraud, Federal Rule of Civil Procedure 9(b) requires the plaintiff to plead the claim with particularity. *Id.*

Propel raises a number of arguments as to how Curtis did not plead Count III with particularity. The Court agrees with some of these arguments, including Curtis's failure to specify which of the defendants violated which provision(s) of the VCPA. Accordingly, the Court will grant Propel's motion to dismiss, but will allow Curtis leave to amend his complaint to cure any perceived deficiencies in Count III.

### III. CONCLUSION

In summary, Curtis has standing to proceed on his EFTA claims because he has alleged harm of the type that Congress sought to prevent when it passed the EFTA. Curtis also has alleged sufficient facts to state a plausible claim for violation of TILA and § 1693k of the EFTA.[10] Recognizing the grounds for differences of opinion on these issues, however, the Court certifies these two issues for appeal. As to the VCPA claim, the Court will permit Curtis to amend his complaint to cure any deficiencies.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: August 8, 2017  
Richmond, VA

/s/ John A. Gibney, Jr.  
United States District Judge

---

[10] The Court did not address Propel's argument that Curtis failed to state a claim for violation of § 1693*l* of the EFTA because Propel failed to raise this argument in its initial motion and briefs in support.